UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESUS MUHAMMAD ALI, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6883 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| THE FINAL CALL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jesus Muhammad Ali brought this suit against The Final Call, Inc., which publishes a newspaper and sells artistic products on behalf of the Nation of Islam, alleging that it sold unauthorized copies of Ali's work, "Minister Farrakhan Painting," in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*. Doc. 24. The case recently was reassigned to the undersigned judge's calendar, Doc. 47, and trial has been set for early August 2015. Docs. 55, 74. Now before the court are Ali's motion for summary judgment as to liability, Doc. 27, and the Final Call's motion to strike one line of the errata sheet that Ali submitted along with his signed deposition, Doc. 34. The Final Call's motion is granted, and Ali's motion is denied.

**Background**

The facts are set forth as favorably to The Final Call as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012). That said, nearly all of the pertinent facts are undisputed.

Ali, whose birth name was Herbert Muhammad Jr., is the grandson of Elijah Muhammad, a former leader of the Nation of Islam. Doc. 40 at ¶¶ 2-3; Doc. 30 at ¶ 3. An artist, Ali has

1

received monetary commissions to create portraits of Nation of Islam members. Doc. 40 at ¶ 4. The Final Call, "a propagation arm of the Nation of Islam," publishes a newspaper and also sells religious books, CDs, DVDs, and prints at its bookstore, at Nation of Islam conventions, and online. *Id*. at ¶¶ 6-7, 9. Of the nine posters or prints that The Final Call has sold over the last twenty-one years, two were versions of Ali's paintings: "Classic Portrait of the Honorable Elijah Muhammad," and "Minister Farrakhan Painting." *Id*. at ¶¶ 10-11.

Ali painted "Classic Portrait of the Honorable Elijah Muhammad" in 1969. *Id*. at ¶ 15; Doc. 30 at ¶ 15. In 1992, Ali authorized the creation of 50,000 prints of the Muhammad portrait and sold them for $25,000.00 to Louis Farrakhan, then and now the Nation of Islam's leader. Doc. 40 at ¶¶ 16, 21; Doc. 30 at ¶¶ 16, 21. The portrait and the prints include a handwritten copyright notice identifying Herbert Muhammad Jr. as the author. Doc. 40 at ¶ 17. In 1993, The Final Call made enlargements of the Muhammad portrait without Ali's authorization. *Id*. at ¶ 19. Ali registered the work with the U.S. Copyright Office in November 1997. Doc. 40 at ¶ 18; Doc. 30 at ¶ 18. The next year, The Final Call paid Ali $1,250.00 in exchange for a waiver and release concerning the enlargements. Doc. 40 at ¶ 20; Doc. 30 at ¶ 20.

In 1983, Ali contacted Farrakhan about painting his portrait. Doc. 40 at ¶ 21, Doc. 30 at ¶ 21. Ali completed the work—the aforementioned "Minister Farrakhan Painting"—in December 1983. Doc. 40 at ¶ 22; Doc. 30 at ¶ 22. The portrait features the head and shoulders of Farrakhan in the foreground and the head and shoulders of Elijah Muhammad superimposed on a nine-point star in the upper right corner. Doc. 40 at ¶ 23. Farrakhan paid Ali $5,000.00 for the work and hung it in his home. *Id*. at ¶ 24; Doc. 30 at ¶ 24. Ali registered his copyright in "Minister Farrakhan Painting" in 1986, Doc. 40 at ¶ 25, and he maintains that he has never licensed or transferred his copyright in the work. Doc. 30 at ¶ 26; Doc. 40 at ¶ 26.

At some point, The Final Call began selling prints titled "Allah's Star of Guidance," which are nearly identical to "Minister Farrakhan Painting." Doc. 40 at ¶¶ 28-29. Unlike "Minister Farrakhan Painting," the prints include a color border and the words, "Allah's Star of Guidance, The Honorable Elijah Muhammad and His Servant Minister Louis Farrakhan." *Id*. at ¶ 30. A "©" symbol and the name Herbert Muhammad Jr. are visible on the prints. *Id*. at ¶ 31. In the three years before Ali filed suit, The Final Call sold 115 of the prints. *Id*. at ¶ 32.

Ali submits he never authorized The Final Call to create or distribute the "Star of Guidance" prints and that The Final Call never paid him to do so. Doc. 30 at ¶¶ 27, 34. The Final Call asserts that Ali's commission with Farrakhan for "Minister Farrakhan Painting" included lithographic copies, Doc. 40 at ¶ 27; Doc. 41 at ¶¶ 1-2; in support, The Final Call cites Ali's deposition testimony and a March 2008 letter that Ali wrote to The Final Call. The letter refers to "[t]he Commission awarded by the Minister for his Oil *& litho*," and expresses his "hope to enter into a Litho[graph] licensing agreement" to the "Star of Guidance." Doc. 37-2 (emphasis added). Ali disputes that the letter indicates that he was aware at the time he wrote the letter that the "Star of Guidance" lithographs had been made. Doc. 46 at ¶ 1.

The relevant portion of Ali's deposition transcript reads as follows:

> Q. And I asked you a few moments ago whether you were commissioned to do an oil painting and lithograph and you said no, correct?
>
> A. That's correct.
>
> Q. But this letter that you wrote in March of 2008 says that you were commissioned to do an oil *and lithograph*, correct?
>
> A. That's what it says.
>
> Q. According to this letter, you were aware at the time that this painting was done that there were lithographs made as well, correct?
>
> MR. HAWKINS: Just answer the question.

> BY THE WITNESS:
>
> A.   Yes.

Doc. 37-1 at 21 (emphasis added). Ali maintains that he misunderstood the last question and notes that he submitted an errata sheet that purports (in line 4) to change his answer from "yes" to "no." Doc. 46 at ¶ 2; Doc. 34-1. The Final Call has moved to strike that erratum, arguing that it is an impermissible material change to Ali's deposition testimony. Doc. 34-4 at 4.

Federal Rule of Civil Procedure 30(e)(1) provides that "the deponent must be allowed 30 days after being notified by the officer that the transcript … is available in which: … (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1). The Seventh Circuit has held that, absent a transcription error, the Rule does not allow post-deposition changes that contradict the deponent's testimony: "We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (citations omitted); *see also Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005) (holding that "Rule 30(e) is to be used for corrective, and not contradictory, changes"). As one court ably put the same point: "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard." *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992).

Ali wishes that he had answered "no" rather than "yes" to the question, "According to this letter you were aware at the time that this painting was done that there were lithographs

made as well, correct?" To justify what he calls a "non-contradictory substantive change," Ali explains that he had "realized he misunderstood the question, and needed to correct his answer." Doc. 35 at 3. The erratum cannot fairly be called "non-contradictory," as nothing contradicts "yes" more than "no." Because the erratum cannot "plausibly be represented as the correction of an error in transcription," *Thorn*, 207 F.3d at 389, it is stricken, and Ali's answer shall stand as transcribed. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267-68 (3d Cir. 2010) ("As a general proposition, a party may not generate from whole cloth a genuine issue of material fact (or eliminate the same) simply by re-tailoring sworn deposition testimony to his or her satisfaction.").

That said, it bears mention that Ali's deposition testimony does not constitute a judicial admission that cannot be controverted, but rather is merely an evidentiary admission. *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are not evidence at all but rather have the effect of withdrawing a fact from contention. A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.") (internal quotation marks and citations omitted). Ali may offer a different answer at trial and, if The Final Call uses the deposition transcript to impeach him, he may attempt to explain the difference between his answers. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 753 (7th Cir. 2002) ("A

party is free to contradict [his] deposition testimony at trial, although [his] opponent may then introduce the prior statement as impeachment.").

**Discussion**

To succeed on his copyright claim, Ali must prove: "(1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements of the work that are original." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013). The Final Call does not dispute either Ali's ownership of a valid copyright or that it sold lithographs nearly identical to his "Minister Farrakhan Painting." Doc. 40 at ¶¶ 25, 29. The parties' sole disagreement concerns whether Ali authorized the copies. *Id*. at ¶¶ 27, 33. Ali's summary judgment motion may be granted only if no reasonable factfinder could find that Ali gave his authorization. Ali's motion is denied because The Final Call has adduced evidence that would allow a reasonable factfinder to find that Farrakhan's commission of "Minister Farrakhan Painting" included lithographic copies, and therefore that Ali authorized the creation and sale of the copies.

As noted, Ali's March 2008 letter referred to "[t]he Commission awarded by the Minister for his Oil *& litho*" as well as his "hope to enter into a Litho[graph] licensing agreement." Doc. 37-2 (emphasis added). The Final Call asserts that this letter "uncontrovertibly establishes that [Ali] authorized lithographs to be made of the Minister Farrakhan work at the same time he created the work," Doc. 37 at 7, and suggests that Ali's request for a licensing agreement refers to his desire to sell additional copies of the painting beyond those that Farrakhan purchased through the original commission, *id*. at 10. That is *a* plausible reading of the letter. Particularly given Ali's prior sale of 50,000 copies of the Muhammad painting to Farrakhan (presumably acting on behalf of Nation of Islam and The Final Call), a reasonable factfinder could (but need not) conclude from the letter that Ali had sought and obtained from Farrakhan a similar

6

agreement for "Minister Farrakhan Painting." Ali reads the letter differently, arguing, "Mr. Ali's request for a licensing agreement only makes sense if the lithographs were unauthorized." Doc. 44 at 7. In the alternative, Ali contends that even if he had been aware of the lithographs, awareness does not equal authorization. *Id*. at 8. Although Ali's reading of the letter is reasonable, it is not *required*. And although Ali is correct that knowledge of the copies does not *necessarily* condone their existence or sale, a reasonable factfinder could infer from Ali's knowledge that he indeed had authorized the copies.

The parties also dispute the meaning of Ali's deposition testimony about the March 2008 letter. As noted, Ali was asked, "[T]his letter that you wrote in March of 2008 says that you were commissioned to do an oil and lithograph, correct?", and he responded, "That's what it says." The next question was, "According to this letter you were aware at the time that this painting was done that there were lithographs made as well, correct?", and Ali answered, "Yes." Doc. 37 at 7. Ali's second answer could be understood by a reasonable factfinder to acknowledge that he knew at the time he entered into the commission with Farrakhan that lithographic copies were included. But even without that second answer, the first answer could reasonably be understood to acknowledge that the letter indicates that the commission included lithographs, effectively conceding that The Final Call's reading of the letter is reasonable. And even without any deposition testimony, the letter alone could fairly be read to contradict Ali's assertion that he never authorized the copies.

If, as the record would permit, the factfinder finds that Ali authorized the creation and sale of the lithographs, the factfinder also could conclude that prints sold by The Final Call were authorized reproductions, which would defeat his copyright claim. *See Scott v. WKJG, Inc.*, 376 F.2d 467, 469 (7th Cir. 1967) ("To establish the infringement of a copyright, the plaintiff has the

7

burden of proving that … the author of the accused work unlawfully appropriated protected material from the copyrighted work."). It follows that Ali is not entitled to summary judgment as to liability on his copyright claim. *See Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 451 (7th Cir. 2001) (holding that the jury must decide whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression"); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 208 (3d Cir. 2005) ("[T]he fact-finder must decide without the aid of expert testimony, but with the perspective of the lay observer, whether the copying was illicit, or an unlawful appropriation of the copyrighted work.") (internal quotation marks omitted).

## Conclusion

For the foregoing reasons, The Final Call's motion to strike is granted and Ali's motion for summary judgment is denied. Line 4 of Ali's errata sheet (Doc. 34-1) is stricken. This case will proceed to trial as to both liability and damages.

June 19, 2015

United States District Judge