UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESUS MUHAMMAD ALI, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6883 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THE FINAL CALL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jesus Muhammad Ali brought this suit against The Final Call, Inc., which publishes a

newspaper and sells artistic products on behalf of the Nation of Islam, alleging that it sold

unauthorized copies of Ali's work, "Minister Farrakhan Painting," in violation of the Copyright

Act, 17 U.S.C. § 101 *et seq.* Doc. 24. The court denied Ali's summary judgment motion, Docs.

75-76 (reported at 2015 WL 3856076 (N.D. Ill. June 19, 2015)), and then entered judgment for

The Final Call after a bench trial, Docs. 84-86, 98. The Seventh Circuit reversed, holding that

Ali had established liability, and remanded with instructions to assess damages. 832 F.3d 755

(7th Cir. 2016).

On remand, Ali seeks statutory damages and an injunction. Doc. 115. The parties relied

on the existing record in pressing their respective positions on both forms of relief. Pursuant to

Federal Rule of Civil Procedure 52(a), the court enters the following Findings of Fact and

Conclusions of Law. To the extent that any Findings of Fact may be considered Conclusions of

Law, they shall be deemed Conclusions of Law, and vice versa. Having considered the

evidence, the court awards Ali $25,000 in statutory damages and issues an injunction as well.

**Findings of Fact**

1.      Ali is a portrait artist.  He formerly did business as, and is the sole owner of, JMA Master Prints, Inc.  Doc. 116 at ¶ 1; Doc. 119 at ¶ 1.

2.      Ali is the grandson of Elijah Muhammad, the leader of the Nation of Islam from 1934 to 1975.  Doc. 116 at ¶ 2; Doc. 119 at ¶ 1.

3.      Ali's birth name was Herbert Muhammad, Jr., but he has gone by the name Jesus Muhammad Ali since 1972.  Doc. 116 at ¶ 3; Doc. 119 at ¶ 1; Doc. 115-2 at 16:9-17, 158:25-159:4.

4.      Ali has been commissioned to paint historical figures, including Robert Kennedy and Dr. Martin Luther King, Jr., as well as Nation of Islam leaders, including his grandfather and Minister Louis Farrakhan.  Doc. 116 at ¶ 4; Doc. 119 at ¶ 1.

5.      The Final Call is a corporation headquartered in Chicago.  It publishes an eponymous newspaper; sells books, DVDs, periodicals, tapes, and prints; and functions, in effect, as a "propagation arm" of the Nation of Islam.  Doc. 116 at ¶¶ 5-8; Doc. 119 at ¶ 1.

6.      The Final Call has sold poster versions of three of Ali's paintings: the "Classic Portrait of the Honorable Elijah Muhammad"; the "Fard Muhammad Painting"; and the "Minister Farrakhan Painting."  Doc. 116 at ¶ 10; Doc. 119 at ¶ 1.  The Elijah Muhammad portrait included a visible copyright notice and Ali's birth name, Herbert Muhammad, Jr.  Doc. 116 at ¶ 19-21; Doc. 119 at ¶ 1.

7.      The Final Call previously infringed Ali's copyrights in the Elijah Muhammad and Fard Muhammad paintings by selling unauthorized lithographs of those paintings.  Doc. 116 at ¶¶ 17, 20-21; Doc. 119 at ¶ 1.

8.      The Final Call compensated Ali in the late 1990s for its unauthorized use of the

Elijah Muhammad and Fard Muhammad paintings.  The payment for the Fard Muhammad

infringement was $6,800.  Doc. 115-2 at 38:15-21.  Ali received $1,250 for entering into a

waiver and release agreement regarding the Elijah Muhammad painting, which released The

Final Call from any "liability past, present or future, with respect to the production and

distribution" of certain lithographs of that painting.  *Id.* at 28:23-29:17, 100:19-103:5, 171:6-

172:13, 176:18-177:13, 187:17-25.  The Final Call's general manager, Fontaine Muhammad,

signed that agreement.  Doc. 121-3.

9.      Ali created the Minister Farrakhan Painting in 1983 or 1984.  Doc. 116 at ¶ 11;

Doc. 119 at ¶ 1; Doc. 115-2 at 44:8-19, 145:10-12.  The painting depicts the head and shoulders

of Farrakhan, with a smaller bust of Elijah Muhammad in the upper right hand corner

superimposed over a nine-pointed star.  Doc. 116 at ¶ 12; Doc. 119 at ¶ 1; Docs. 115-9, 115-10.

10.      Ali registered his copyright in the Minister Farrakhan Painting with the United

States Copyright Office in 1986.  Doc. 116 at ¶ 13; Doc. 119 at ¶ 1; Doc. 115-1.

11.      In the 1980s, The Final Call produced lithographs that were nearly identical to the

Minister Farrakhan Painting and labeled them "Allah's Star of Guidance" or "The Star of

Guidance."  Doc. 115-2 at 50:6-51:15.  A copyright symbol and Ali's birth name, Herbert

Muhammad, Jr., are visible on the prints.  Doc. 116 at ¶ 14; Doc. 119 at ¶ 1.

12.      The Nation of Islam and The Final Call are, in Fontaine Muhammad's words,

"really one and the same."  Doc. 115-2 at 191:7-11.

13.      The Final Call became aware—or was reminded, given that it produced them in

the first place—that the "Star of Guidance" lithographs reproduced Ali's painting no later than

March 2008, when Ali told The Final Call in a letter that he had authored the work. *Id*. at 178:19-179:23; Doc. 121-5.

14. In 2008 or 2009, Ali sent The Final Call's attorney a list of his copyrighted works. Doc. 115-2 at 40:4-41:7. The list includes the Minister Farrakhan Painting. Doc. 115-4.

15. Although The Final Call's lithographs of the Minister Farrakhan Painting are labeled "The Star of Guidance" or "Allah's Star of Guidance," The Final Call must have known that the lithographs reproduced the Minister Farrakhan Painting, as The Final Call itself produced the lithographs from that painting.

16. In August 2011, Ali sent a letter to an official of The Nation of Islam, with a cc to Fontaine Muhammad, charging that they were violating his copyrights and referencing the fact that Ali had previously sent The Final Call's attorney a list of his copyrighted works. Doc. 115-2 at 39:8-40:13; Doc. 115-3.

17. As Fontaine Muhammad admitted, The Final Call has been aware from Ali's writings that Ali is Elijah Muhammad's grandson. Doc. 115-2 at 190:2-10. One such writing is a book, *The Evolution of Nation of Islam*, of which The Final Call purchased one thousand copies in 2003. *Id*. at 160:19-161:19. The book references Ali's birth name. *Ibid*.

18. Fontaine Muhammad and The Final Call had to have known that Ali's birth name was Herbert Muhammad, Jr. First, Ali is the grandson of Elijah Muhammad, the long-time leader of the Nation of Islam. It is inconceivable that high-ranking officials at The Final Call, the Nation of Islam's propagation arm, did not know Ali's personal and family history. Second, The Final Call purchased one thousand copies of Ali's book, which referenced his birth name. Third, Fontaine Muhammad signed The Final Call's agreement with Ali regarding the lithographs made of the Elijah Muhammad portrait, which bore Ali's birth name; Fontaine

Muhammad of course would not have agreed to pay Ali for The Final Call's unauthorized use of

a work signed by Herbert Muhammad, Jr. if Fontaine Muhammad did not know that Ali and

Herbert Muhammad, Jr. were the same person.

19.     The Final Call sold 115 of the "Star of Guidance" prints between 2010 and 2013.

Doc. 116 at ¶ 15; Doc. 119 at ¶ 1; Doc. 115-11 at 3.  This is the timeframe within which the

pertinent copyright infringement occurred.  Doc. 115 at 6 n.2.

20.     In a December 2013 letter to Ali's attorney, The Final Call's attorney stated that,

"in 2009, [he] personally directed [The Final Call] to cease and desist selling any of [Ali's]

copyrighted works until this matter could be resolved."  Doc. 115-8 at 3.  To explain why The

Final Call nonetheless sold the "Star of Guidance" prints after 2009, The Final Call's attorney

stated that The Final Call "was unaware that the 'Allah's Star of Guidance' was [Ali's] work and

that is why they inadvertently failed to remove that lithograph from their products list."  *Ibid*.

21.     The attorney's explanation is meritless.  The Final Call knew that the "Star of

Guidance" lithographs reproduced Ali's work for at least two reasons: (1) the lithographs bore a

copyright symbol and the signature of Herbert Muhammad, Jr., whom (as noted above) The

Final Call knew was the same person as Ali; (2) Ali had informed The Final Call that he owned

the copyright in the Minister Farrakhan Painting, which (as noted above) The Final Call knew

had been reproduced in the "Star of Guidance" lithographs.  And if The Final Call truly did not

know that the "Star of Guidance" lithographs reproduced Ali's work, it was extraordinarily

reckless in not knowing.

22.     From 1993-2014, the Final Call had only nine different prints in its inventory.

Doc 115-2 at 186:14-187:9.  This fact confirms that The Final Call either knew that the "Star of

Guidance" lithographs reproduced Ali's work or was extraordinarily reckless in not knowing.  It

is not as if The Final Call could understandably have lost track of the provenance of the "Star of Guidance" lithographs because it had an inventory of thousands, or hundreds, or even dozens of prints.

## Conclusions of Law

Ali has elected to "recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1); *see* Doc. 116 at ¶ 23; Doc. 119 at ¶ 1. The Copyright Act permits a copyright owner to recover statutory damages "with respect to any one work, for which any one infringer is liable individually … in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1); *see BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005). If, however, a "copyright owner sustains the burden of proving, and the court finds, that [the] infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). At the other end of the spectrum, if an "infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." *Ibid*.

The Final Call, contending that it was not aware and had no reason to believe that it was infringing Ali's work, asks the court to award $200 in statutory damages. Doc. 119 at 2. Ali, arguing that The Final Call's infringement was willful, seeks $100,000 in statutory damages. Doc. 115 at 6, 11. For the following reasons, the court finds that The Final Call's infringement was willful, which necessarily means that The Final Call cannot show that it was not aware or had no reason to believe that its acts infringed Ali's copyright.

6

"[A] finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (internal quotation marks omitted). Although "evidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness, it is not the only way that willfulness can be established." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521 n.8 (1994). Rather, because "one who undertakes a course of infringing conduct may neither sneer in the face of [a] copyright owner nor hide its head in the sand like an ostrich," *ibid.*, courts may consider a variety of other factors when evaluating willfulness, including "evidence that the defendant ignored the plaintiff's notices about copyright protection … and passed the matter off as a nuisance," *Wildlife Exp. Corp.*, 18 F.3d at 512; *see also Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir. 1988).

The record demonstrates, by at least a preponderance of the evidence, that by producing and selling the "Star of Guidance" lithographs, The Final Call acted intentionally or, at a minimum, in reckless disregard of Ali's copyright in the Minister Farrakhan Painting. This is not The Final Call's first, or even second, infringement of Ali's work; it previously violated Ali's copyrights in two other works by, again, selling print reproductions thereof. This history of infringement weighs in favor of finding that The Final Call acted willfully, or at least with reckless disregard, the third time around. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1228 (7th Cir. 1991) ("Evidence of past reluctance by an infringer to pay copyright fees certainly is relevant in assessing his present infringements."). So, too, does the evidence

summarized and discussed in the Findings of Fact section above: (1) in 2008 or 2009, Ali informed The Final Call that he owned a copyright in the Minister Farrakhan Painting, which The Final Call knew or was extremely reckless in not knowing was reproduced in the "Star of Guidance" lithographs; (2) Ali expressly informed The Final Call in March 2008 that the "Star of Guidance" was his work; (3) the "Star of Guidance" lithographs bore a copyright symbol and Ali's birth name, Herbert Muhammad, Jr., which The Final Call knew or was extremely reckless in not knowing was Ali's birth name; and (4) in August 2011, Ali sent a letter, copying Fontaine Muhammad, charging that his copyrights were being violated and referencing the fact that he had previously sent The Final Call's attorney a list of his copyrighted works.

Because The Final Call's infringement "was committed willfully," the court may "in its discretion … increase the award of statutory damages to a sum of not more than $150,000," 17 U.S.C. § 504(c)(2), from the presumptive $30,000 limit. When "determining the amount of statutory damages to be awarded," the court enjoys "wide discretion … constrained only by the specified [statutory] maxima and minima." *Int'l Korwin Corp.*, 855 F.2d at 383 (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). The court is "not required to follow any rigid formula. Indeed, district courts … may consider various factors such as the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringements." *Chi-Boy Music*, 930 F.2d at 1229. In cases of willful infringement, "the statutory damages award may be designed to penalize the infringer and to deter future violations." *Id*. at 1230.

Although The Final Call's willful infringement increases the statutory maximum from $30,000 to $150,000, the court is not obligated to award more than $30,000, and the circumstances here do not support such an award. Taking into account the relevant

considerations—including the need to deter and punish The Final Call for this infringement in light of its two prior infringements of Ali's works; the amounts that The Final Call paid Ali to remedy those two prior infringements; the modest number of "Star of Guidance" lithographs that The Final Call in fact sold; and the Final Call's decision to sell those lithographs despite Ali's repeated communications informing it of his copyright—the facts and circumstances warrant a statutory damage award of $25,000.

Ali also seeks "an injunction permanently barring The Final Call from producing or selling copies of any works based on the Farrakhan painting, and [requiring The Final Call to] destroy all remaining illicitly produced lithographs in its possession." Doc. 115 at 10-11. The Final Call states that it does not object to an injunction "preventing the future sale of … any remaining copies in the possession of The Final Call." Doc. 120 at 9. That injunctive relief will be granted because it is uncontested and also because, given the parties' history, such relief is "reasonable to prevent or restrain infringement of [Ali's] copyright." 17 U.S.C. § 502(a).

The Final Call does not clearly address Ali's request that it be required to destroy all remaining "Star of Guidance" prints, and accordingly has forfeited any objection to that relief. That relief is warranted on the merits in any event. *See* 17 U.S.C. § 503(b) ("As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies … found to have been made or used in violation of the copyright owner's exclusive rights … ."); *Capitol Records, Inc. v. Koyate*, 2008 WL 2857237, at *8 (N.D. Ind. July 22, 2008) (holding that where the infringer retained control and made available to others the copyrighted materials, his "past and current history indicate[d] that [he] w[ould] not cease his infringing activities," rendering appropriate an injunction ordering the destruction of all infringing materials); *Atl. Recording Corp. v. Visione*, 2008 WL 1924892, at *4 (N.D. Ill. Apr. 29, 2008).

9

**Conclusion**

The court finds that The Final Call's infringement of Ali's copyright in the Minister Farrakhan Painting was willful, orders The Final Call to pay Ali $25,000 in statutory damages, and enjoins The Final Call from producing or selling any works based upon that painting and to destroy all remaining copies of those works in its possession.

October 6, 2017

_____
United States District Judge